**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Marc Eberly, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 CV 06129 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Jonathon Harnack, Willie Mayes, | ) | |
| Mike Wilgosiewicz, Raul Salinas, Gabe Velazquez, | ) | |
| Brian McCarty, Cheryl Lyne, Chris Peeler, | ) | |
| Ryan Rojkowski, Kane County, and | ) | |
| Unidentified Employees of the Kane County | ) | |
| Sheriff's Office, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marc Eberly was arrested by officers of the Kane County Sheriff's Office in September 2017. One of the officers on the scene—the parties dispute who, how, and why—fired a shot in Eberly's direction. Luckily, the shot missed. Eberly later pled guilty to state charges of residential burglary, attempt to disarm a peace officer, and resisting a peace officer.

Eberly now brings a variety of federal and state civil-rights claims arising from the arrest.[1] R. 1, Complaint. He alleges that employees of the Kane County Sheriff's Office fabricated a false narrative as to what happened during the arrest in order to

---

[1]This Court has federal-question jurisdiction over Counts 1, 2, 3, 5 (the Complaint skips placing a label on a Count 4), 6, and 10, which are brought under 42 U.S.C. § 1983. 28 U.S.C. § 1331. The state law claims (Counts 7, 8, and 9) arise out of the same transaction, occurrence, or series of transactions or occurrences underlying the federal claims, so supplemental jurisdiction applies to the extent that the federal claims survive the motion to dismiss. 28 U.S.C. § 1367.

1

prosecute him for crimes that he did not commit. Compl. ¶¶ 1–8. The Defendants have moved to dismiss all of the claims for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6); R. 10, Defs.' Motion to Dismiss. They argue that Eberly's federal claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on those claims would impugn the validity of the state criminal convictions. Defs.' Mot. Dismiss at 4–5. The defense also argues that the state claims are untimely. *Id.* at 6.

For the reasons set forth below, the motion to dismiss is granted against the claims for withholding evidence (Count 1), failure to intervene (Count 2), fabrication of evidence (Count 3), unreasonable pretrial detention (Count 5), conspiracy to violate federal constitutional rights (Count 6), intentional infliction of emotional distress (Count 7), and state law conspiracy (Count 8), but denied as to the excessive-force claim (Count 10) and denied in part on the indemnification claim (Count 9). The surviving claim alleges that Officer Jonathon Harnack used excessive force against Eberly when Harnack fired a shot at Eberly during the arrest. This excessive-force claim does not bear on the validity of Eberly's convictions in any way and is not barred by *Heck*. Count 9 is a state law claim for indemnification of the individual defendants by Kane County, so it survives in limited part along with the claim against Harnack. But Eberly's remaining federal claims, as currently pleaded, are barred by *Heck*. The Court also relinquishes jurisdiction over the other state law claims, because they are not part of the same case or controversy as the excessive-force claim.

## I. Background

Accepting as true, as required, *see Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007), the factual allegations in Eberly's complaint, the arrest and later prosecution unfolded as follows. On September 13, 2017, Eberly was arrested when officers of the Kane County Sheriff's Office responded to a home-invasion call and found him in a private home in Big Rock, Illinois. R. 10 at 17, Exh. A, Indictment. During the arrest, one of the officers shot at Mr. Eberly from across the room. Compl. ¶ 1.

The officers and the Sheriff's Office maintained throughout the investigation of the shooting and the prosecution of Eberly that Officer Mark Wilgosiewicz had discharged his weapon when Eberly engaged in a "close quarters struggle" with Wilgosiewicz. *Id.* ¶ 14. In contrast, Eberly alleges that the true shooter was Officer Jonathon Harnack, who was off duty at the time but nevertheless at the scene. *Id.* ¶¶ 1, 14. Harnack's name does not appear in any record of the arrest or in the Kane County Sheriff's investigation of the shooting. *Id.* ¶ 15. According to Eberly, he learned of Harnack's involvement from Sergeant Chris Peeler, who allegedly "has told other people that the actual officer involved in this case that fired the weapon" was Harnack. *Id.* ¶ 14. In order to protect Harnack, the Defendants engaged in an elaborate cover-up, including fabricating false evidence, hiding exculpatory evidence, and otherwise promoting the version of events in which Wilgosiewicz fired the shot. *Id.* ¶¶ 2–5. This cover-up ultimately "forced" Eberly "to admit to crimes he did not commit," *id.* ¶ 5, and he only "recently" became aware of exculpatory evidence that would

have shown his innocence of the charges—or at least the charges that he attempted to disarm an officer and resisted arrest. *Id.* ¶¶ 3, 5, 8.

In this federal case, Eberly alleges various constitutional deprivations arising from the arrest and the subsequent malicious prosecution. Count 1 alleges that the Defendants suppressed exculpatory evidence. Count 2 alleges that each of the Defendants failed to intervene in the other Defendants' violations of Eberly's constitutional rights. Count 3 alleges that the Defendants knowingly fabricated false evidence offered in connection with Eberly's conviction and sentencing. (There is no claim labelled Count 4, so the Court will stick with the Complaint's numbering scheme for clarity.) In Count 5, which targets the pretrial detention, Eberly alleges that he was "unreasonably seized and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury." Compl. ¶ 36. Count 6 alleges a conspiracy among the Defendants to deprive Eberly of his constitutional rights. Lastly (at least last of the federal law claims), Count 10 alleges that "Officer Harnack's firing of his firearm, which grazed Plaintiff, was more force than was reasonably necessary to investigate the scene and effectuate Plaintiff's arrest," in violation of the Fourth Amendment. Compl. ¶¶ 60–61.

Eberly also pleads three state law claims arising from the arrest and subsequent prosecution. Count 7 alleges that the Defendants intentionally (or recklessly) inflicted emotional distress on Eberly. Count 8 mirrors Count 6, this time alleging a conspiracy among the Defendants to violate state (rather than federal) law. Finally,

4

Count 9 seeks indemnification from Kane County for any compensatory damages that might be awarded against any of the individual defendants.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The Defendants have sought to dismiss all of the claims, asserting separate grounds against the federal versus the state law claims: first, that the federal claims are barred by *Heck v. Humphrey*; and second, that the state law claims are untimely. The Court first examines the federal claims, explaining why each is or is not *Heck*-barred, and then moves on to the state claims.

### A. Federal Law Claims

#### 1. Claims Arising from the Investigation and Prosecution

As the Defendants correctly observe, claims under 42 U.S.C. § 1983 are not cognizable where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his [state] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). That principle goes only so far: "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original). As a threshold matter, Eberly does not contend that his convictions and sentences have "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of

habeas corpus."² *Id.* So what remains is to parse each claim to understand whether, if successful, the victory would cast doubt on the validity of Eberly's convictions.

In all of the federal claims (except Count 10), Eberly insists on his innocence, says that he was maliciously prosecuted, and was forced to plead guilty to crimes he did not commit. In Count 1, for example, Eberly alleges that the Defendants fabricated evidence and withheld exculpatory evidence, and that "[a]bsent these Defendants' misconduct, Plaintiff[] could not and would not have been further prosecuted, and Plaintiff would not have been forced to plead to a crime he did not commit." Compl. ¶ 20. The harm that he complains of is a "violation of his constitutional rights to due process and a fair trial," resulting in, among other things, "loss of liberty." *Id.* ¶ 22. Count 2 alleges the Defendants' failure to intervene as to the violations alleged in Count 1. Count 3 alleges that the Defendants knowingly fabricated evidence and that a "reasonable likelihood exists that the false evidence affected the decision of the Plaintiff and the courts that considered this false evidence in sentencing," *id.* ¶ 30, again leading to an unconstitutional deprivation of plaintiff's liberty, *id.* ¶ 32. Count 6 alleges a conspiracy among the Defendants to commit the constitutional violations complained of in the previous counts.

---

²Eberly does mention, in passing, his purported "exoneration." *See* Compl. ¶ 37 ("As a result of the Defendants' false allegations and fabricated evidence, Plaintiff was seized in September 2017 and remained incarcerated from that day continuing on through his trial and until his eventual exoneration."). But Eberly does not develop this allegation any more than that; in context, he is probably referring to charges that were dropped, rather than the convictions that, according to all the other allegations and exhibits, remain valid criminal judgments.

7

By asserting those allegations of innocence, the premise of those federal claims is clear: Eberly believes that he would not have been charged, prosecuted, and convicted of the officer-related charges (resisting a peace officer and attempt to disarm a peace officer) absent the Defendants' allegedly unlawful conduct. *See, e.g.*, Compl. ¶ 51. Granting Eberly relief as to any of those claims thus would necessarily imply the invalidity of these convictions.[3] *Heck* teaches that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." 512 U.S. at 481 (discussing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). Put another way, "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. The state law analogy to the classic tort of malicious prosecution applies: a malicious-prosecution claim has always required that the plaintiff prove that the criminal proceeding terminated in her favor. *Id.* at 484. Here, Eberly's claims of fabrication of evidence, hiding exculpatory evidence, and a malicious conspiracy to prosecute the plaintiff for crimes that he says he did not commit cannot survive the bar in *Heck*.

Moving on from the first three counts, the analysis of Count 5 is not as straightforward. It is possible, in theory, to bring a § 1983 claim for unreasonable pretrial detention without running afoul of the bar in *Heck* even if the plaintiff ultimately is

---

[3]In his response to the motion to dismiss, Eberly argues that because none of his convictions specifically implicate Officer Harnack, *Heck* does not apply. R. 13 at 5. This is an incorrect application of *Heck*; the relief that Eberly requests in each of his federal claims impugns his convictions, and thus these claims cannot survive. The analysis must focus on whether, if successful, the plaintiff's claim would invalidate a state criminal conviction, without regard to whether any given defendant is specifically named in that criminal judgment.

convicted of the underlying crime. For example, a plaintiff might be able to successfully allege that fabricated evidence caused the judge to deny pretrial release (or to set a too-high bond requirement), and that had the arresting officers not fabricated the evidence, then the plaintiff would have been released. But to avoid the bar in *Heck*, the plaintiff also *must* plausibly allege that the fabricated evidence was *not* the basis for the eventual conviction. And that is a far cry from what Eberly has pleaded. All he alleges is that the "Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so," and that he was detained "[a]s a result of the Defendants' false allegations and fabricated evidence." Compl. ¶¶ 35, 37. Worse, Eberly outright alleges that the "Defendants' malicious plan succeeded, and Plaintiff was forced to admit to crimes he did not commit …." *Id.* ¶ 5. In order to survive a motion to dismiss predicated on *Heck*, Eberly should have professed his innocence and he would have needed to address in more detail why his pretrial detention was unreasonable yet not premised on facts that underlie the convictions. So Count 5 too falls to the bar in *Heck*.

Although the claims for evidence fabrication, conspiracy, malicious prosecution, and unreasonable detention (Counts 1, 2, 3, and 5) must be dismissed, the dismissal is without prejudice—for now—to allow Eberly a chance to replead the claims. It remains to be seen whether Eberly can truly navigate around *Heck* on these claims, but because he has not yet amended the complaint, the Court authorizes him to file

9

an amended complaint by December 4, 2020. If no amended complaint is filed by that deadline, the dismissals of those claims will become final in this case.[4]

## 2. Excessive Force

The excessive-force claim (Count 10), however, does survive *Heck*. Remember that, for this claim, Eberly alleges that Officer Harnack used excessive force when he fired a shot at Eberly during the arrest—that it was a level of force "unnecessary for both the investigation and the subsequent arrest of Plaintiff." Compl. ¶ 62. At least as presently asserted, a victory for Eberly premised on these allegations would not *necessarily* imply that the convictions for resisting a police officer and for attempting to disarm a police officer were invalid. *See, e.g.*, *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) ("To properly apply *Heck*'s bar against certain damage actions, a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted."). Indeed, the factual basis for the convictions, as set forth in the plea colloquy, do not mention that a shot was fired at Eberly at all. R. 10, Mot. Dismiss, Exh. 2, Plea Tr. at 14–16. It is true that, for issue-preclusion purposes, Eberly will be stuck with the factual admissions that he made in support of the guilty pleas to those charges. And Eberly's allegation that Sergeant Chris Peeler disclosed that Officer Harnack, rather than Officer Wilgosiewicz, in fact fired the shot, Compl. ¶ 14, poses several unanswered questions, including: How did Eberly

---

[4]Because the dismissals are based on the bar in *Heck*, courts typically refrain from calling the dismissal a dismissal "with prejudice," because in theory the claims can be brought later if the convictions are overturned or pardoned. But the dismissals of those claims will become "final" (for lack of a better term) in this case if no amended complaint is filed by the deadline.

10

know that Peeler said this? Who are the other people that Peeler supposedly told? So the plea-colloquy admissions and the uncertainty of the Peeler disclosure make this case an uphill climb for Eberly. But at the pleading stage, Eberly has not pleaded himself out of court on the excessive-force claim. The claim survives *Heck*.

One final observation on the excessive-force claim is warranted. In the Complaint, Eberly seems to imply that Officer Harnack intended to shoot at Eberly. Compl. ¶¶ 1, 14, 62. However, in Eberly's response to the motion to dismiss, he characterizes the shooting as "accidental." Response at 7. That characterization of the shooting would refute the basis for a Fourth Amendment claim, because a seizure by definition must be *intentional. County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (holding that a Fourth Amendment seizure happens only "*through means intentionally applied*") (emphasis in original) (quotation omitted). In other words, an accidental shooting cannot amount to a Fourth Amendment violation. Nor, for that matter, would a theory that the shooting was accidental support a substantive due process claim, *id.* at 849 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"), nor a state law claim for *intentional* infliction of emotional distress. None of this was briefed by the parties, but both sides should consider this legal standard going forward.

11

**B. State Law Claims**

The Defendants' sole argument for dismissing the state law claims is that those claims were untimely filed. At the pleading stage, however, Eberly was not required to plead around the statute of limitations, so the argument is rejected.

"In general, the limitations period in a § 1983 case is governed by the personal injury laws of the state where the injury occurred." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). "A two-year statute of limitations generally applies to personal injury actions in Illinois, 735 Ill. Comp. Stat. 5/13–202; thus, § 1983 claims in Illinois are also governed by a two-year limitations period." *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). In contrast to the federal-law-based § 1983 claims, however, state law claims are subject to a shorter limitations period. Specifically, "Illinois local governmental entities and their employees … benefit from a one-year statute of limitations for 'civil actions' against them," and therefore "the one-year period applies to state-law claims that are joined with a § 1983 claim." *Id.* (citing 745 ILCS 10/8–101). Eberly's arrest occurred on September 13, 2017, and he filed this action on September 12, 2019. Compl. at 1. On the surface, then, the state law claims appear to be untimely.

But the statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "The exception" to this rule "occurs where … the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals

12

that an action is untimely under the governing statute of limitations." *Id*. But the Complaint here does not spell out a 100 percent certain winning argument on the statute of limitations. Yes, it was filed nearly two years after the arrest. But the Complaint also alleges a concealment theory, asserting that Eberly "did not become aware of the exculpatory evidence until *recently*." Compl. ¶ 8 (emphasis added). Under Illinois law, fraudulent concealment of a cause of action triggers a five-year limitations period. 735 ILCS 5/13–215. It is true that, as a factual matter, "recently" is a vague description of timing. And as a legal matter, perhaps whatever concealment can be proven will fall short of the legal test for fraudulent concealment. But all of this is a matter for summary judgment at the earliest, not for the pleading stage. The statute of limitations does not, at least not yet, provide a basis to dismiss the state law claims.

But there is a different problem with the state law claims, one which this Court has an independent obligation to raise: subject matter jurisdiction. For right now, the only remaining federal law claim is the excessive-force claim. It is axiomatic that the federal courts are courts of limited jurisdiction, and typically do not have the authority to hear state law claims standing alone unless those claims satisfy the requirements for diversity jurisdiction. Federal district courts do, however, "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "When only state law claims remain after federal claims have dropped out of the case, the district court enjoys broad discretion whether to relinquish supplemental jurisdiction over

13

the state law claims. Indeed, when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (*per curiam*) (cleaned up); *see also* 28 U.S.C. § 1367(c)(3).[5]

The only federal claim remaining in this case is the excessive-force claim (Count 10), alleging that Officer Harnack used excessive force by firing a shot during the arrest. But the state law claims are all premised on the allegedly fabricated evidence and the malicious prosecution. That is, the claims for intentional infliction of emotional distress (Count 7) and civil conspiracy (Count 8) all arise from what happened *after* the arrest. The federal law claims to which those claims relate are the *Heck*-barred federal claims. So there is no supplemental jurisdiction over Counts 7 and 8. The Court thus relinquishes jurisdiction over those claims, and they are dismissed without prejudice.[6]

That leaves the state law claim for indemnification (Count 9). To the extent that the indemnification claim is premised on paying any judgment against Officer Harnack on the excessive-force claim, it survives in that limited respect. In *Carver v. Sheriff of La Salle County*, the Illinois Supreme Court reaffirmed that Illinois counties "must indemnify a sheriff or deputy for 'any judgment recovered against him or her as the result of an injury to the person or property of another caused by the sheriff

---

[5]This Opinion uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2007).

[6]If Eberly repleads the *Heck*-barred claims in an amended complaint, then he may include these state law claims on the theory that supplemental jurisdiction would apply.

14

or deputy in the performance of his or her duties, except where the injury results from the willful misconduct of the sheriff or deputy,'" 787 N.E.2d 127, 134 (Ill. 2003) (quoting 55 ILCS 5/5–1002) (cleaned up), and further held that "the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity," *id.* at 141 (interpreting 745 ILCS 10/9–102). It is true, as the Defendants argue, that indemnification cannot be premised on *respondeat superior*, because Kane County "is not liable under a *respondeat superior* theory for the conduct of its elected Sheriff or his deputies." Defs.' Mot. Dismiss at 7; *see Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). But Kane County is nonetheless responsible for indemnifying Officer Harnack if he is eventually found liable on the excessive-force claim, and for that reason Kane County is not only an appropriate, but an indispensable, party to this litigation. *See Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir. 2003) (*per curiam*). In all other respects—that is, as to any other claim or any other defendant—the indemnification claim is dismissed.

## IV. Conclusion

The motion to dismiss is granted against the claims for withholding evidence (Count 1), failure to intervene (Count 2), fabrication of evidence (Count 3), unreasonable pretrial detention (Count 5), conspiracy to violate federal constitutional rights (Count 6), intentional infliction of emotional distress (Count 7), and state law conspiracy (Count 8). As discussed earlier, for now the dismissals are without prejudice, and Eberly may try to replead them by December 4, 2020. If no amended complaint is filed, then the dismissals will become final. The excessive-force claim (Count 10)

15

against Harnack survives, as does the indemnification claim (Count 9), but only to the extent that it is premised on the excessive-force claim against Harnack. The indemnification claim is otherwise dismissed.

Discovery shall commence on the excessive-force claim. Because this case was filed before the end of the Mandatory Initial Discovery Pilot Program, the standing order governing that program still governs this case. The remaining defendants may pause on answering the Complaint given the possibility of an amended complaint, but MID disclosures on the excessive-force claim must be made by both sides on December 14, 2020, whether or not an amended complaint is filed. The parties shall file a joint initial status report, R. 3, proposing other discovery deadlines by December 11, 2020. The tracking status hearing of November 20, 2020, is reset to December 18, 2020, at 8:30 a.m., but to track the case only (no appearance is required, the case will not be called).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 12, 2020