IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARC EBERLY,

                Plaintiff,

        v.

JONATHAN HARNACK, ET. AL.

                Defendants.

No. 19 CV 6129

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Plaintiff Marc Eberly ("Eberly") brings this civil rights action under 42 U.S.C. § 1983 against Defendants Jonathan Harnack ("Deputy Harnack") of the Kane County Sheriff's Office and Kane County arising from events that occurred on September 13, 2017. Eberly has no independent recollection of the incident, but he was arrested in Kane County on September 13th at the scene of a residential burglary. As he was being arrested, Eberly struggled with and tried to disarm two Kane County deputies: Deputy Rojkowski and Deputy Wilgosiewicz. During the struggle with Deputy Wilgosiewicz, a single shot was fired in Eberly's direction, missing him. Eberly contends Deputy Harnack of the Kane County Sheriff's Department fired that shot, and in doing so, used excessive force in violation of the Fourth Amendment.

Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56. [ECF No. 102]. Because Eberly has failed to produce admissible

evidence establishing the existence of a disputed issue of material fact as to whether Deputy Harnack fired the shot on September 13, 2017 – the uncontradicted evidence is that he did not – the Court grants summary judgment in Defendants' favor and against Eberly.

## PRELIMINARY MATTERS

Before turning to the universe of relevant, undisputed facts for purposes of summary judgment, the Court must resolve Eberly's objections to Defendants' Local Rule 56.1 statement and the admissibility of one pivotal piece of evidence on which Eberly relies. Eberly declined to respond to several paragraphs in Defendants' Local Rule 56.1 statement because, according to Eberly, they contained "multiple sentences and multiple purported facts" in violation of Local Rules 56.1(d)(1) and 56.1(d)(5). *See* [ECF No. 106] at ¶¶ 6, 16, 26, 30, 33, 35. Eberly substantively responded to another Local Rule 56.1 paragraph to which he objected, [ECF No. 106] at ¶ 25, but the other six remain unanswered. *Id.* at ¶¶ 6, 16, 26, 30, 33, 35.

Local Rule 56.1 is designed to crystalize material facts and put them before the court in an orderly and concise manner. It is within the Court's discretion to require strict compliance with Local Rule 56.1. *Boss v. Castro,* 816 F.3d 910, 914 (7th Cir. 2016); *see also Igasaki v. Illinois Dep't of Fin. and Prof'l Regulation,* 988 F.3d 948, 956 (7th Cir. 2021) (citing *Stevo v. Frasor,* 662 F.3d 880, 886–87 (7th Cir. 2011)). The Rule does not categorically prohibit paragraphs containing multiple sentences or multiple facts, the purported defect of which Eberly complains here, but instead requires "concise numbered paragraphs" not to exceed eighty. N.D. Ill. L.R. 56.1(d)(1),

(d)(5). Defendants' statement of facts satisfies this requirement, in the Court's view. [ECF No. 103]. The paragraphs are concise, numbered, and logically grouped, and those to which Eberly objects generally comprise only two or three sentences. This format does not "significantly hamper[] review and adjudication" of Defendants' summary judgment motion, *Little v. J.B. Pritzker for Governor*, 2021 WL 3666429 (N.D. Ill. 2021), and so the Court in its discretion overrules Eberly's boilerplate objections to paragraphs 6, 16, 26, 30, 33, 35, and to the extent necessary, paragraph 25. [ECF No. 106].

This leaves the Court to assess the consequences of Eberly's decision to not confront substantively certain facts contained in Defendants' Local Rule 56.1 statements and instead rest solely on his objections to the purportedly improper form of those statements. On this point, Local Rule 56.1 and the Seventh Circuit are clear. Responses under Local Rule 56.1(b) "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). "[F]ailure to admit or deny facts presented in the moving party's statement...render the facts presented by the moving party as undisputed." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004)); *see also, Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Refusing to respond and resting on an objection is not an option under Local Rule 56.1, so Eberly refused to respond fully to Defendants' Local Rule 56.1 statement at his peril. Therefore, paragraphs 6, 16, 26, 30, 33, 35, and to the extent necessary paragraph 25, of Defendants' Local Rule

56.1 Statement [ECF No. 103] are deemed admitted based on Eberly's deficient response to those paragraphs. [ECF No. 106]. The Court, however, also substantively reviewed the evidence Defendants cite in support of the facts Eberly ignored and that evidence tends to support the undisputed truth of those facts. This means that regardless of whether the facts contained in the paragraphs to which Eberly objected are deemed admitted as a matter of law, the Court would take those facts as true for purposes of Defendants' motion for summary judgment in any event.[1]

Next, the Court must grapple with the admissibility of the key piece of evidence on which Eberly's house of cards is built: a text message exchange between Kane County Commander Chris Peeler ("Commander Peeler") and Eberly's aunt, Judy Utley ("Utley"), following the events of September 13, 2017. On September 15, 2017, Utley ran into Commander Peeler at Hughes Creek Restaurant, where Utley is a hostess. DSOF ¶ 23; [ECF No. 103-10] at 15:1–24; [ECF No. 103-9] at 60:2–9. Utley, Eberly, and Deputy Harnack generally live in the same neighborhood and know each other for reasons independent of this case – Deputy Harnack previously worked at a car wash with Eberly, Utley, and one of Eberly's cousins; Eberly's brother was one of Deputy Harnack's wife's childhood best friends; and Deputy Harnack once lived next to Eberly's grandfather and another of Eberly's aunts. DSOF ¶¶ 21–23.

At the restaurant, Utley asked Commander Peeler about the shooting. Commander Peeler told her one of the officers present at the scene was a rookie who

---

[1] As noted above, after his boilerplate objection to Defendants' Local Rule 56.1 Statement [ECF No. 106], at ¶ 25, Eberly also purported to deny particular facts in that paragraph. Those denials are either based on inadmissible evidence, or do not substantively address Defendants' proffered facts.

had just started and he was helping that rookie because he needed counseling and support. DSOF ¶ 25. Utley gave Commander Peeler her mobile phone number, and he sent her a text message that same day giving her his phone number. [ECF No. 103-9] at 60:2–24; [ECF No. 103-10] at 18:13–18. Because Utley knew Deputy Harnack was a rookie at the Kane County Sheriff's Office, and Commander Peeler mentioned helping a rookie who was involved, she asked Commander Peeler if Deputy Harnack was one of the officers. DSOF ¶¶ 21–23, 25. Commander Peeler responded "yes." DSOF ¶ 26. The next morning, Commander Peeler realized he had confused Deputy Harnack with Deputy Rojkowski, who also was a recently hired deputy with the Kane County Sheriff's Office. DSOF ¶ 26; [ECF No. 103-10] at 14:18–24, 19:2–10. Commander Peeler then sent a text message to Utley, told her he was mistaken, and clarified that Deputy Harnack was not involved in the shooting incident. DSOF ¶ 26. The relevant portions of the text conversations described above are reproduced here:

<u>September 15, 2017 at 6:54 p.m.</u>
**Commander Peeler:** This is me, Chris Peeler

<u>September 16, 2017 at 7:20 a.m.</u>
**Utley:** Chris, this is Judy Utley. I have one more question-was one of the officers Jon Harnack?
**Utley:** I do understand if you can't tell me.
**Commander Peeler:** Yes
**Utley:** You tell Jon he did what he needed and we love and support him
**Commander Peeler:** Will do, do you know him?
**Utley:** Very well good friend of our family (heart emoji)
**Utley:** Thank you Chris
**Commander Peeler:** You're welcome. Also, I emailed ASA Engerman – I don't know if he'll have the case but he will pass on the info, if he doesn't, I included Director Lewis (head of the jail) NS Lt. McCarty (head of INV division).
**Utley:** Chris we can't thank you enough and want Jon to be ok.

**Commander Peeler:** If there's anything else you need or have questions about, don't hesitate to call me.

**Utley:** Do you have any suggestions for an attorney who will help the family in the direction they would like to go treatment institutions etc

**Commander Peeler:** That I don't know, sorry

**Utley:** Ok thank you so much Chris hopefully we can get some psychiatric help somewhere and they can do it before he actually finds someone to bond him out (prayer hands emoji)

**Commander Peeler:** Yes, I even explained that to Bill Engnerman how you guys wished the bond was higher because you felt safer with him there

<u>September 17, 2017 at 7:53 a.m.</u>

**Commander Peeler:** OMG, I had been doing some training with Jon Harnack last week and was thinking more about your question and whether or not to answer, than paying attention to the name. It was NOT Jon. Sorry for any confusion!

**Utley:** Thank you Chris for clarifying. Regardless my heart goes out to all that were involved.

[ECF No. 106-1] at 1–12.

Admissibility is a threshold question on summary judgment because a court may only consider evidence that would be admissible at trial. FED.R.CIV.P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020); *see also Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible evidence will not overcome a motion for summary judgment). The above text messages between Commander Peeler and Utley are not only hearsay within the meaning of Federal Rule of Evidence 802, but Commander Peeler also lacks personal knowledge as required by Federal Rule of Evidence 602 to testify to the facts upon which Eberly wants to rely.

Eberly offers Commander Peeler's text message affirming "Jon Harnack" was "one of the officers" as evidence that Deputy Harnack was in fact one of the officers

6

present at the incident on September 13, 2017. [ECF No. 106-1] at 1. This text message is classic hearsay. FED.R.EVID. 801(c) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Commander Peeler is a non-party whose out-of-court statements are being offered for the truth of the matter asserted, namely, to prove that Deputy Harnack was at the scene of the incident and could have fired a shot at Eberly. Eberly offers no applicable hearsay exception (and the Court knows of none) that would render Commander Peeler's statement in a text message, which he recanted less than twenty-four hours later, admissible at trial for the truth of the matter asserted consistent with the Federal Rules of Evidence. The Court therefore cannot consider Commander Peeler's text message exchange with Utley at summary judgment. *Cariel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016); *see also, Billups v. I.C. Sys., Inc.,* 2022 WL 3684572, at *5 (N.D. Ill. 2022); *Johnson v. Clark*, 2022 WL 971997, at *3 (N.D. Ill. 2022).

Nor can the Court consider statements that are not based on personal knowledge. FED.R.EVID. 602; FED.R.CIV.P. 56(c)(1)(4). Commander Peeler was not present at the incident on September 13, 2017, and he therefore has no percipient witness testimony to offer about who was or was not there, let alone who did or did not fire a shot in Eberly's direction. *See Widmar v. Sun Chem. Corp.,* 772 F.3d 457, 460 (7th Cir. 2014) ("[A] plaintiff seeking to thwart summary judgment must comply with...Federal Rule of Evidence 602...which require[s] that testimony be based on personal knowledge. Personal knowledge can include reasonable inferences, but it

does not include speculating as to an employer's state of mind, or other intuitions, hunches, or rumors."). Thus, because the text message exchange between Commander Peeler and Utley is inadmissible hearsay within the meaning of Rules 801 and 802, and Commander Peeler lacks personal knowledge of the matters contained in the text messages under Rule 602, the text message exchange is not admissible evidence that can be considered at summary judgment or trial.

## FACTS

The following admissible facts are not in dispute.[2] Eberly broke into an elderly woman's home in Kane County in the early morning hours of September 13, 2017. DSOF ¶ 3. Police responded to a 911 call from the homeowner at around 3 a.m. – the responding officers primarily were Kane County Sherriff's Officers, although some Sugar Grove Police Department and DeKalb County officers also responded. DSOF ¶¶ 13, 15. Kane County Sheriff's Deputies Rojkowski and Wilgosiewicz, and Sugar Grove Police Officer Eric Grutzius, were first on scene[3] and the three officers entered

---

[2] These facts are taken from Defendants' 56.1. Statement ("DSOF") [ECF No. 103], Plaintiff's Response [ECF No. 106], Plaintiff's 56.1 Statement of Additional Facts ("PSOF") [ECF No. 107], and the exhibits attached thereto.

[3] Eberly disputes this fact but he provides no admissible or contradictory evidence to show the fact is disputed. [ECF No. 106] at ¶ 15. The fact is therefore deemed admitted. Eberly's catch-all citations to inadmissible hearsay [ECF No. 106-1] and Deputy Rojkowski's deposition [ECF No. 103-7] are unavailing, as the former cannot defeat a motion for summary judgment and the latter does not contradict the fact Eberly contests – that only Deputies Rojkowski and Wilgosiewicz, and Sugar Grove Officer Eric Grutzius, were on scene at the time entry to the house was made, and only those three entered the house. [ECF No. 106] at ¶ 16 (citing [ECF No. 103-7] at 23) ("Q: When you entered the house -- or when you were outside the house getting ready to enter the house, do you remember if there was any other deputies, officers, law enforcement personnel who had arrived? A. No. It was just the three of us that entered the house. Q. Was there any law enforcement personnel who did not enter the house that you knew of at that point? **A. Later on in the night, yes.** Q. Do you remember who those law enforcement personnel were? A. Lieutenant Willie Mayes showed up, Sergeant

the home together. DSOF ¶¶ 15, 16. When the officers entered the home, they heard Eberly in a bedroom at the end of a hallway and confronted him. DSOF ¶ 16. The officers tried to arrest Eberly, but he ran towards Deputy Rojkowski and tried to grab his firearm. DSOF ¶ 16. Deputy Rojkowski was able to pull his gun from Eberly's grasp, after which Eberly ran at Deputy Wilgosiewicz and tried instead to seize his firearm. DSOF ¶¶ 16, 17. Deputy Wilgosiewicz struggled with Eberly and fired one round from his gun,[4] which missed Eberly's body but struck his clothing. DSOF ¶ 18. Eberly was arrested as other Kane County Sherriff's Officers, as well as DeKalb County Officers, began to arrive on scene. DSOF ¶ 13.

Eberly eventually pled guilty to one count of Residential Burglary and two counts of Attempt to Disarm a Peace Officer arising out of the incident. DSOF ¶ 19. But Eberly has no independent recollection of the incident. He had been drinking that day, consumed cannabis, took hydrocodone, and took more than his prescribed dose of Xanax. DSOF ¶ 6; [ECF No. 103-3] at 49:22–24, 51:18–25, 52:6–14, 53:18–54:22, 55:12–15, 59:2–62:7. His first memory after the incident is waking up in jail. DSOF ¶ 10; [ECF No. 103-3] at 62:4–7, 63:6–8.

---

Cheryl Lyne, and then there was briefly some DeKalb County officers there that left shortly after. Q. Okay. Do you remember when they showed up? A. When I finally came out of the house after the initial incident, I remember seeing them in the driveway and then they were being told to leave.") (emphasis added).

[4] As discussed earlier in this opinion, Eberly disputes this fact. He says Deputy Harnack fired the shot in his direction, and this supposition is the crux of his entire case. But Eberly cites no admissible material evidence to dispute the fact that Deputy Wilgosiewicz fired the shot in his direction on September 13. In addition, to the limited extent Eberly relies on other evidence in the record to support his theory, those assertions do not create a material fact dispute as to whether Deputy Harnack was present at the incident or fired a shot at Eberly as discussed later in this opinion.

The morning after the incident, Commander Chris Peeler reported to work as the day shift commander. DSOF ¶ 28. He was not present at the scene of the shooting and was not involved in the investigation but observed Deputies Rojkowski and Wilgosiewicz writing incident reports at the station that morning. DSOF ¶ 29; [ECF No. 103-10] at 9:23–24, 10:1, 10:22–24, 12:4–24, 13:1–16. Both Deputy Rojkowski and Deputy Wilgosiewicz appeared shaken up, and Commander Peeler told them they should not be writing reports immediately following an officer-involved shooting, as there were procedures to be followed and psychological services that could be made available. [ECF No. 13-10] at 26:10–27:2. Both deputies then left the station. A few days later, Commander Peeler escorted Deputy Rojkowski to the Kane County Diagnostic Center to participate in a psychological examination and debrief the police-involved shooting. DSOF ¶¶ 29, 30. All three officers who were present for the shooting – Deputy Rojkowski, Deputy Wilgosiewicz, and Officer Grutzius – participated in this peer support program. DSOF ¶ 30.

Lieutenant Willie Mayes was the most senior officer from the Kane County Sheriff's Office to respond to the incident. He heard the gunshot from outside of the house, and when he ran inside to see what happened, he saw two Kane County deputies there – Deputy Rojkowski and Deputy Wilgosiewicz – and possibly a Sugar Grove officer. [ECF No. 103-2] at 9:14–11:10, 28:13–24. Deputy Velazquez and Deputy Gregory were also on scene, but outside the house with Lieutenant Mayes when the gunshot went off. [ECF No. 103-2] at 9:14–11:10, 26:18–24, 28:13–24.

After a review by the Professional Standards unit, Lieutenant Mayes was disciplined for not following the proper procedures for an officer involved shooting. DSOF ¶ 39. Lieutenant Mayes believed that because Eberly was not struck by the bullet or injured during the incident, it did not qualify as an officer-involved shooting and so he did not need to take any additional steps. DSOF ¶ 39; [ECF No. 103-2] at 30:1–10. Lieutenant Mayes informed the on-call detective, Raul Salinas, about the incident, and Detective Salinas eventually did come to the scene to take photographs and collect anything that needed to be collected, including a single shell casing. [ECF No. 103-2] at 13:1–7, 14:10–20. But because Lieutenant Mayes did not correctly classify the incident and did not ensure the on-call detective processed the scene as an officer-involved shooting, he was disciplined. DSOF ¶¶ 39, 40; [ECF No. 106] at ¶¶ 39, 40; [ECF No. 103-2] at 30:15–31:7.

Deputy Harnack, who Eberly accuses of firing the shot, was not on duty during the incident. DSOF ¶ 5. He worked the 3:00 p.m. to 11:00 p.m. shift on September 12, 2017, and the 3:00 p.m. to 11:00 p.m. shift on September 13, 2017. DSOF ¶ 5. He does not specifically remember what he did when he got home late on September 12, 2017, but after a shift, he would either watch television for a short time or go straight to sleep. [ECF No. 103-1] at 12:13–13:9. His family, including his wife and two young children, would typically be asleep when he got home, and his wife does not remember anything notable about the night of September 12, 2017. [ECF No. 106-2] at 11:9–21. Deputy Harnack's nightly routine upon returning home from work was to put all his police gear in the basement, including turning his portable radio off to charge and his

11

gun in his safe. DSOF ¶ 35. He has never listened to radio traffic while off duty, and aside from his portable radio, had no other device on the day of the incident that would allow him to do so at home. DSOF ¶ 35. Deputy Harnack denied responding to the incident or firing his gun in Eberly's direction that night and heard about the incident for the first time when he reported to work the following morning. DSOF ¶ 37; [ECF No. 103-1] at 14:7–18, 15:20–17:17. Not a single officer from any responding agency – Kane County, Sugar Grove, or DeKalb County – saw Deputy Harnack at the scene of the incident. DSOF ¶ 31. Deputy Wilgosiewicz admitted to firing the shot. DSOF ¶ 18. Officer Grutzius from the Sugar Grove Police Department saw Deputy Wilgosiewicz fire the shot. [ECF No. 103-8] at 1. Eberly himself does not remember seeing Deputy Harnack at the scene of the shooting, and Deputy Harnack's name is not mentioned in any police report related to the incident. DSOF ¶¶ 32, 34.

## ANALYSIS

The Court views all facts and makes all reasonable inferences in the light most favorable to Eberly, the party opposing summary judgment. *Parker v. Four Seasons Hotels, Ltd.,* 845 F.3d 807, 814 (7th Cir. 2017). The Court does not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003); *see also, Logan v. City of Chicago,* 4 F.4th 529, 536 (7th Cir. 2021); FED.R.CIV.P. 56(a). Eberly is entitled to "the benefit of reasonable inferences from the evidence, but not

speculative inferences in [his] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). Nor can Eberly defeat summary judgment by relying upon inadmissible hearsay in an affidavit or deposition. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 562 (7th Cir. 1996) (citing *Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1518–19 (7th Cir. 1992)); FED.R.CIV.P. 56(e).

Not a single piece of admissible evidence suggests Deputy Harnack was present at the incident on September 13, 2017, let alone that he fired a shot in Eberly's direction. "Allegations are not facts, and accusations are not evidence." *Robinson v. Hayes*, 2022 WL 16856391, at *2 (N.D. Ill. 2022). Eberly's completely unsupported belief that Deputy Harnack is lying about firing the gunshot – in apparent concert with every law enforcement officer from multiple agencies who responded on September 13, 2017 – cannot substitute for actual facts supported by the record. And that record, now fully developed after three years of discovery, does not establish any material dispute of fact as to who fired the gunshot Eberly characterizes as excessive force. Deputy Wilgosiewicz admitted to firing the shot. DSOF ¶ 18. Officer Grutzius from the Sugar Grove Police Department saw Deputy Wilgosiewicz fire the shot. [ECF No. 103-8] at 1. Deputy Rojkowski saw Deputy Wilgosiewicz fire the shot. [ECF No. 103-7] at 28:13–29:6. Deputy Harnack was not on duty and denied being at the scene of the shooting. DSOF ¶¶ 5, 37. Not a single officer from any responding law enforcement agency – Kane County, Sugar Grove, or DeKalb County – saw Deputy Harnack there. DSOF ¶ 31. Eberly himself did not see Deputy Harnack there, nor did he see Deputy Harnack fire a shot in his direction.

DSOF ¶ 32. Deputy Harnack's name is not mentioned by anyone in any police report related to the incident. DSOF ¶ 34. "[S]peculation or conjecture will not defeat a summary judgment motion," *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007), and that is all that has been presented to the Court in opposition to Defendants' motion for summary judgment.

Other than the Peeler-Utley text messages, Eberly relies on two stray facts to attempt to create a factual dispute where none exists. First, Eberly raises the specter of an inadequate post-shooting forensic investigation to suggest the Kane County Sheriff's Office covered up Deputy Harnack's role in the shooting. But the mere fact that a member of the Kane County Sheriff's Office did not follow proper procedures after the shooting does not create a dispute of material fact as to whether Deputy Harnack was personally involved in that incident, especially in the absence of a single piece of admissible evidence suggesting he was even on scene.

Second, Eberly offers more inadmissible hearsay between Commander Peeler and Utley; namely, that during their initial verbal conversation, Commander Peeler told Utley he was helping an unnamed "rookie" after the incident. Eberly implies that because Commander Peeler was helping a "rookie" who was present at the incident, and Deputy Harnack is a "rookie," Deputy Harnack could be the "rookie" to whom Commander Peeler was referring. The inadmissibility of this out-of-court hearsay statement by Commander Peeler to Utley aside, the potentially admissible fact that Commander Peeler was helping a rookie involved in the incident does not create a material fact dispute as to whether Deputy Harnack shot at Eberly, nor is there any

14

ambiguity for Eberly to exploit regarding the identity of the rookie. Commander Peeler testified at his deposition that the rookie he helped after the shooting was Deputy Rojkowski. DSOF ¶¶ 29, 30. Deputy Rojkowski testified to the same: that Commander Peeler helped him receive counseling and other services after the incident. [ECF No. 103-7] at 53:14–23. So, even if Commander Peeler testified at trial, over a relevance objection, that he was helping a rookie officer who was present at the September 13, 2017 incident, this fact has no bearing on whether Deputy Harnack was personally involved in the incident in the face of uncontradicted evidence that Commander Peeler was helping Deputy Rojkowski. In other words, the mere fact that Commander Peeler was helping a rookie officer involved in the incident is not evidence that can get Eberly to trial in this case. The inference Eberly seeks to draw – that Deputy Harnack was that rookie officer – is unsupported and pure speculation on this record. Therefore, the additional facts and tenuous inferences Eberly cites in an effort to create a material fact dispute and avoid summary judgment do not help him in that effort.

On this record, Eberly has not shown that Deputy Harnack was personally involved in the conduct about which he complains. To prevail on his claim under Section 1983 that Deputy Harnack used excessive force in violation of his Fourth Amendment rights, Eberly must establish a causal connection between Deputy Harnack, the sued official, and the alleged misconduct. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a

§ 1983 action unless he caused or participated in an alleged constitutional deprivation...A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary."). Eberly has wholly failed to do so, as nothing more than hearsay and Eberly's speculation places Deputy Harnack at the scene of the incident, let alone with a gun in his hand firing the shot and causing the alleged constitutional misconduct. "[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation," *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010), and there are no facts in the record suggesting Deputy Harnack was personally involved, in any capacity, in the September 13, 2017 incident. Without evidence of personal involvement, Deputy Harnack cannot be liable under Section 1983. *Martin v. Noble Cnty. Sheriff's Dep't,* 2021 WL 5505407, at *1 (7th Cir. 2021); *Colbert v. City of Chicago,* 851 F.3d 649, 657–58 (7th Cir. 2017).

Finally, the Court need not reach the other questions that consume the remainder of the parties' briefing of the instant motion for summary judgment, namely whether Deputy Harnack's "use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances," *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018), and whether Deputy Harnack is entitled to qualified immunity, because Eberly has failed to produce any admissible evidence to establish that Deputy Harnack personally caused or participated in an alleged constitutional deprivation. *Colbert*, 851 F.3d at 657. Similarly, the Court need not determine whether Kane County must indemnify Deputy Harnack for his actions on September 13, 2017, as the predicate claim to

establish the corollary liability against Deputy Harnack cannot stand. Accordingly, the Court grants summary judgment in favor of Defendants Harnack and Kane County and against Plaintiff Eberly.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 102] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    December 14, 2022